**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

NANCY J. GRANT,

        Plaintiff,

v.                                    Case No.  2:06-cv-429-FtM-34DNF

DONALD H. HARTERY and JAMES S.
PARKER,

        Defendants.
_____/

**O R D E R**[1]

    **THIS CAUSE** is before the Court on Defendants Donald H. Hartery, Jr., and James

S. Parker's Motion to Dismiss (Doc. No. 57), filed on August 31, 2007.  On October 12,

2007, Plaintiff, a pro se litigant,[2] filed a response in opposition to the Motion to Dismiss.  See

Response to Defendant's [sic] August 31, 2007, Motion to Dismiss (Doc. No. 68; Response).

Accordingly, the matter is ripe for review.

    **I.  Procedural History**

    The Complaint in this action was originally filed in this Court on August 23, 2006, see

Complaint and Notice of Removal of Cases from State Court (Doc. No. 1), and amended on

September 25, 2006, see [First] Amended Complaint (Doc. No. 8; First Amended

Complaint), and on August 13, 2007, see [Second] Amended Complaint (Doc. No. 48;

---

      [1]    This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically.  However, it has been entered only to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

      [2]    The Court notes that Plaintiff is proceeding pro se, and as such, Plaintiff's pleadings will be liberally construed.  See Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

Second Amended Complaint).   In the Second Amended Complaint, Plaintiff asserts numerous statutory and constitutional claims against the Honorable James S. Parker, Circuit Judge, Twelfth Judicial Circuit, and Assistant State Attorney Donald H. Hartery, Jr., all arising from their "malicious and selective" criminal prosecution of Plaintiff.  Id. ¶¶7-8. Plaintiff maintains that Defendants Parker and Hartery conspired against her, are "working in collusion . . . in a revengeful pursuit upon [her]," id. ¶¶26-27, and in the course of the pretrial proceedings have violated her constitutional rights, including: (1) her First Amendment right to free speech, see id. ¶9, ¶11, ¶20; (2) her Fifth Amendment right to assistance of counsel, see id. ¶15; (3) her Sixth Amendment right to assistance of counsel and to be informed of the nature and cause of criminal charges, see id. ¶15, ¶19; (4) her Eighth Amendment right to be free from excessive bail, see id. ¶13; and (5) her Fourteenth Amendment right to due process, see id. ¶9.[3]   Plaintiff also alleges that Defendants conspired against her in violation of 42 U.S.C. §1985 and 18 U.S.C. §241.  See id. ¶27. Finally, Plaintiff asserts that Defendant Hartery violated the "Separation of Powers clause," by creating proposed jury instructions to be used in Plaintiff's future trial.  See id. ¶20. Based on these allegations, Plaintiff requests that the Court "[t]ake jurisdiction of this case," and issue an injunction prohibiting Defendant Hartery from continuing to prosecute Plaintiff's case in state court.  Plaintiff further requests a change of venue and $10,000,000 in compensatory and punitive damages.  See id.

---

[3]     Although Plaintiff does not cite a specific statutory basis for her constitutional claims, the Court construes these claims as plead pursuant to 42 U.S.C. §1983.

Attached to the Second Amended Complaint, Plaintiff submitted numerous exhibits which appear to be related to the criminal proceeding pending in state court against Plaintiff, including: (1) Text of Section 454.23, Florida Statutes (Exhibits 1-2); (2) pretrial documents (Exhibits 3-4; 6); (3) September 13, 2005 letter from the Florida Bar (Exhibit 5); (4) Motion to Dismiss for Lack of Jurisdiction, filed in state court (Exhibit 7); (5) Affidavits of Benjamin R. Daughtrey and Christopher Daughtrey (Exhibit 8); (6) Transcript of state court hearing (Exhibit 9); (7) Text of orders entered in various cases by the Supreme Court of Florida (Exhibit 10); (8) Text of proposed jury instructions (Exhibit 11); (9) Text of General Acts and Resolutions Adopted by the Legislature of Florida (Exhibit 12); (10) Text of section 2.04, Florida Statutes (Exhibit 13); and (11) Memorandum to the Task Force to Define the Practice of Law in Massachusetts prepared by the Federal Trade Commission and the United States Department of Justice (Exhibit 14).  See generally Second Amended Complaint Exhibits 1-14 (Doc. No. 48, Exhibits 1-14).

On May 2, 2007, the Court held a hearing to set the dates for the scheduling of this case, see Order (Doc. No. 35), and on July 26, 2007, the Honorable Douglas N. Frazier, United States Magistrate Judge, entered a Case Management and Scheduling Order (Doc. No. 45; Case Management Order) setting the deadlines for this case, as determined at the hearing.[4]  The Case Management Order established March 21, 2008, as the deadline for completing discovery[5] and April 21, 2008, as the deadline for filing dispositive motions.

---

[4]     Prior to the May 2, 2007 hearing, Plaintiff filed two Unilateral Case Management Reports, both of which were stricken from the record.  See Docket Text.

[5]     On November 6, 2007, the Court entered an Order staying discovery pending the resolution of immunity issues raised by Defendants in the Motion to Dismiss.  See Order (Doc. No. 70).

Case Management Order at 1.  On August 20, 2007, the date Plaintiff's trial was set to commence, Plaintiff filed a motion for a temporary restraining order, <u>see</u> Plaintiff's Emergency Motion for Temporary Restraining Order (Doc. No. 49; Motion); Brief in Support of Emergency Motion for Restraining Order (Doc. No. 50; Memorandum), which the Court denied, <u>see</u> Order (Doc. No. 52).  Thereafter, on October 12, 2007, Plaintiff filed a second motion for a temporary restraining order, <u>see</u> Emergency Application for Temporary Restraining Order & Request for Hearing on Preliminary Injunction (Doc. No. 67), which the Court also denied, <u>see</u> Order (Doc. No. 69).

**II.  Background Facts**[6]

On June 15, 2005, pursuant to a subpoena, Plaintiff Nancy Jo Grant attended an administrative hearing of the Florida Bar, Twelfth Judicial Circuit Unlicensed Practice of the Law Committee (Committee).   Second Amended Complaint ¶12.   Following the administrative hearing, on or about September 13, 2005,[7] the Committee prepared and sent a letter to Plaintiff, advising her that "[s]hould [the Committee] receive additional complaints that [Plaintiff has] engaged in the unlicensed practice of law by clear and convincing evidence, the [Committee] will recommend litigation before the Supreme Court of Florida for civil injunctive relief."  <u>See</u> id.  ¶12.  Thereafter, on June 29, 2006, Plaintiff was arrested and charged with unlicensed practice of law, in violation of section 454.23, Florida Statutes, <u>see</u>

---

[6]        The facts summarized are drawn from the allegations contained in Plaintiff's Second Amended Complaint.

[7]        In the Second Amended Complaint, Plaintiff alleges that the letter was dated September 13, 2005, and also appears to suggest that the letter was instead dated September 12, 2005.  <u>See</u> Second Amended Complaint ¶¶11-12.  In any event, the precise date of the letter is of no consequence to the Court's ruling on the instant Motion to Dismiss.

id. ¶5, and was scheduled to stand trial on these charges on August 20, 2007, see id. ¶6. During the initial hearings on these charges, Plaintiff's bond was set at $50,000, and Plaintiff was required to pay $5,000 to be released on bail.  Id. ¶13.  As an additional condition of Plaintiff's release on bond, Defendant Parker cautioned Plaintiff that she "was to adhere to all of the stipulations stated in the September 13[, 2005] letter [sent to Plaintiff from the Florida Bar] and was not allowed to talk to any inmates or inmate's family members about anything going on in the courthouse or jail or her bond would be revoke[d]."  Id. ¶¶10-11.

On July 10, 2006, Plaintiff moved to dismiss the criminal charges pending against her for lack of subject matter jurisdiction. Id. ¶14. Specifically, Plaintiff asserted that the Twelfth Judicial Circuit Court "did not have jurisdiction to hear Unlicensed Practice of Law issues" pursuant to Florida Constitution Article V, Section 15.  Id.  On July 24, 2006, Defendant Parker presided over Plaintiff's arraignment, during which he allegedly failed to advise Plaintiff that she had right to assistance of counsel, id. ¶15, and on August 2, 2006, Defendant Parker held a hearing on Plaintiff's motion to dismiss for lack of jurisdiction, id. ¶17. Defendant Hartery was the prosecutor present at the August 2, 2006 hearing, id. ¶18, and on November 26, 2006, created jury instructions to be used at Plaintiff's criminal trial, id. ¶20.

### III.  Standard of Review

In ruling on a motion to dismiss, the Court "must accept the allegations set forth in the complaint as true." Lotierzo v. A Woman's World Med. Ctr., 278 F.3d 1180, 1182 (11th Cir. 2002); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon

v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).   Nonetheless, the plaintiff

must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomms., 372

F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are

not necessary," the complaint should "'give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)

(quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  Further, the plaintiff

must allege "enough facts to state a claim that is plausible on its face,"[8] Bell Atlantic, 127 S.

Ct. at 1974.  The "plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Id. at 1964-65 (internal quotations omitted); see also Jackson,

372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts

or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and

quotations omitted).

### IV. Discussion

In the Motion to Dismiss, Defendants argue that the Court should abstain from

adjudicating Plaintiff's claims for injunctive and declaratory relief, in order to avoid interfering

with a pending state court criminal proceeding.  See Motion to Dismiss at 3.  Alternatively,

Defendants assert that because "Plaintiff's federal claims are inextricably intertwined with

---

[8]        In the Motion to Dismiss, Defendants cite Banco Latino v. Gomez Lopez, 17 F. Supp. 2d 1327,
1331 (S.D. Fla. 1998) and Conley v. Gibson, 355 U.S. 41 (1957) for the standard of review for a motion to
dismiss: that a complaint should only be dismissed under Rule 12(b)(6) when "'it appears beyond doubt that
plaintiff can prove no set of facts which would entitle him to relief.'"  Motion to Dismiss at 2.  However, the Court
notes that in Bell Atlantic, the United States Supreme Court clarified that to survive a motion to dismiss, a
complaint must contain factual allegations which are "enough to raise a right to relief above the speculative
level, on the assumption that all the allegations in the complaint are true."  127 S. Ct. at 1965.

the state criminal action against her," the Court lacks subject matter jurisdiction over Plaintiff's claims under the <u>Rooker</u>-<u>Feldman</u> doctrine.  <u>See</u> <u>id.</u> at 6.  Defendants further contend that they are immune from suit based on absolute or qualified immunity.  <u>See</u> <u>id.</u> 8-14. Finally, Defendants assert that the Court should dismiss Plaintiff's Second Amended Complaint for failure to comply with the pleading requirements of Rules 8 and 10.  <u>See</u> <u>id.</u> at 7-8.

### A. Failure to Comply With Rule 15

As a preliminary matter, the Court's review of Plaintiff's Response reveals that Plaintiff failed to comply with the Federal Rules of Civil Procedure by attempting, in the Response, to raise claims against Defendants as well as other individuals that were not alleged in the Amended Complaint.[9]  <u>See</u> <u>generally</u> Response. Rule 15(a) establishes that "[a] party may amend its pleading once as a matter of course before being served with a responsive pleading."  Otherwise, a party may amend its pleading only upon leave of court or by obtaining written consent of the opposing party.  <u>See</u> <u>id.</u>  In the Response, Plaintiff asserts constitutional claims that allegedly accrued subsequent to the filing of the Second Amended Complaint.  For instance, in the Response, Plaintiff argues for the first time that the potential future suspension of her driver's license by the state court is unconstitutional as a means of enforcing the court-ordered payment of legal fees and costs.  <u>See</u> Response at 3-5.  In addition, Plaintiff purports to assert claims for constitutional violations against the

---

[9]       The Court notes that on March 6, 2007, the Court entered an Order (Doc. No. 28), reminding Ms. Grant that "a <u>pro</u> <u>se</u> litigant is subject to the same law and rules of the court as a litigant who is represented by counsel, including the Federal Rules of Civil Procedure . . . and the Local Rules of the Middle District of Florida."  <u>See</u> Order at 1.

Honorable Lee E. Haworth, Circuit Judge, Twelfth Judicial Circuit, who is not mentioned in the Second Amended Complaint and is not a party to this action.  <u>See</u> <u>e.g.</u>, <u>id.</u> at 6 ("The special conditions of probation set forth in Judge Haworth's order of September 25, 2007 are prior restraints on Plaintiff's freedom of speech, freedom of association, and right to petition."); <u>Id.</u> at 2 n.1 ("Judge Haworth has no judicial capacity and hence no judicial immunity, for anything he did during [Plaintiff's] trial . . . a series of private, individual capacity violations of Plaintiff's rights."); <u>Id.</u> at 18 ("Judge Haworth . . . . was prejudiced against [Plaintiff's] witnesses and so he took them on voir dire to avoid the presentation of any evidence which might damage the state's case against [her].").  If Plaintiff wished to advance claims not already pled in the Second Amended Complaint, she should have sought leave of Court to file a Third Amended Complaint.  <u>See id.</u>  Plaintiff may not amend the Second Amended Complaint merely by asserting new claims in her Response to Defendants' Motion to Dismiss.  <u>See</u> Rule 15.  Accordingly, the Court will not address at this time any issues regarding the suspension of Plaintiff's driver's license or any claims involving alleged actions taken by Judge Haworth.

**B. Abstention**

In the Motion to Dismiss, Defendants argue that Plaintiff's claim "has the effect of interfering with pending state court actions," and thus, the Court should abstain from the present action based upon the United States Supreme Court decision in <u>Younger v. Harris</u>, 401 U.S. 37 (1971).  Motion to Dismiss at 4.  Specifically, Defendants maintain that Plaintiff is barred from asserting her claim in federal court, as there is already "an ongoing judicial process involving the Plaintiff and her claims in state circuit court," and, as such, Plaintiff has

an "adequate and sufficient opportunity to present her claims in the state court proceeding and the state appellate process." Id. Moreover, Defendants contend that abstention is also warranted by the "important state interests regarding the unlicensed practice of law" at issue in the proceeding. See id. at 5. Plaintiff, on the other hand, asserts that the Court should apply the Supreme Court doctrine of Dombrowski v. Pfister, 380 U.S. 479 (1965) and exercise its discretion to intervene in the state criminal proceeding. See Response at 3-4.

### 1. **Younger** Doctrine

The United States Supreme Court has recognized that generally federal courts should not act to restrain a pending criminal prosecution in state court. See Younger, 401 U.S. at 41, 44-45; see also 28 U.S.C. §2283; Hughes v. Atty. Gen. of Fla., 377 F.3d 1258, 1263 (11th Cir. 2004). Nevertheless, Plaintiff suggests that the applicable standard to be used in this case is that set forth by the Supreme Court in Dombrowski and as such, this Court must intervene and stay the state court proceeding. See Response at 1, 3-4, 16. In support of this proposition, Plaintiff urges that Younger is nothing more than a "clarification of when the earlier-decided Dombrowki[] equitable intervention is appropriate." Response at 4. While the Court agrees that Younger clarified the circumstances in which a federal court may properly interfere in ongoing state proceedings, a review of the decision reflects the Court's rejection of any suggestion that Dombrowski broadened those narrow circumstances. See Younger, 401 U.S. at 53. Indeed, the Supreme Court specifically stated:

> For these reasons, fundamental not only to our federal system but also to the basic functions of the Judicial Branch of the National Government under our Constitution, we hold that the Dombrowski decision should not be regarded

> as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions.  We do not think that opinion stands for the proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of a showing that the statute "on its face" abridges First Amendment rights.

Younger, 401 U.S. at 53.  More than a decade later, the Supreme Court reiterated the importance of Younger abstention and the policy reasons supporting the doctrine:

> Younger v. Harris and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.  The policies underlying Younger abstention have been frequently reiterated by this Court.  The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) (quoting Younger, 401 U.S. at 44) (internal cross-reference omitted).

In reliance on Younger, the Eleventh Circuit Court of Appeals has concluded, "a state's trial and appeals process is considered 'a unitary system,' and Younger prevents a federal court from disrupting the process while a case is on appeal."  Redner v. Citrus County, Fla., 919 F.2d 646, 649 (11th Cir. 1990).  Younger abstention is appropriate if (1) there is a pending state proceeding and the requested federal remedy would create an undue interference with that state proceeding; (2) the state proceeding implicates important state interests; and (3) the state proceeding provides the plaintiff with an adequate opportunity to raise its federal constitutional questions. 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting Middlesex, 457 U.S. at 432).  If these factors are present, abstention applies absent a showing that the proceedings were motivated by bad

faith, a threat of serious and immediate irreparable injury, or that there is no adequate alternative state forum where constitutional claims may be raised. See Middlesex, 457 U.S. at 435. Further, unless one of these narrow exceptions is met, a plaintiff who seeks to challenge an allegedly defective state proceeding must first exhaust all available state remedies prior to instituting a lawsuit in federal court. Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975).

The first two requirements for Younger abstention are readily satisfied here. According to the allegations of Plaintiff's Second Amended Complaint, there is a pending state criminal prosecution, which Plaintiff asks the Court to enjoin.[10] See generally Second Amended Complaint. Plaintiff requests that the Court invalidate the criminal statute underlying her criminal prosecution, section 454.23, Florida Statutes. See id. ¶9. Plaintiff further asks the Court to review and invalidate Defendant Parker's orders and rulings issued during the pretrial proceedings, as well as his alleged failure to advise Plaintiff of her Sixth Amendment right to counsel at her arraignment. See e.g., id. ¶11, ¶13, ¶15. Finally, Plaintiff asks the Court to review the motive behind Defendant Hartery's decision to pursue Plaintiff's criminal conviction, see id. ¶7, and the constitutionality of his proposed jury instructions, see id. ¶20. Based on these allegations, Plaintiff further seeks an injunction barring Defendant Hartery from continuing to prosecute Plaintiff in state court. See id. at 9. Certainly, enjoining the ongoing proceeding and any further prosecution of Plaintiff would create an undue

---

[10]     The trial in this proceeding was scheduled to commence less than one week after the Second Amended Complaint was filed. See Second Amended Complaint at 9.

interference with the state court proceedings.  As to the second requirement, neither party

disputes that there is an "important state interest" at stake in these proceedings.

The Court next turns to the third requirement set forth in Middlesex.  "Minimal respect

for the state processes . . . precludes any presumption that the state courts will not

safeguard federal constitutional rights."  31 Foster Children, 329 F.3d at 1279.  As such, a

district court "should assume that state procedures will afford an adequate remedy, in the

absence of unambiguous authority to the contrary."  Id.  As a result, the plaintiff bears the

burden of showing that state procedural law clearly bars the presentation of his or her

constitutional claims.  Old Republic Union Ins. Co. v. Tillis Trucking Co., 124 F.3d 1258,

1262 (11th Cir. 1997) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987)) (internal

alteration omitted)); see also 31 Foster Children, 329 F.3d at 1279.  In assessing the

adequacy of state remedies, "the relevant question is not whether the state courts can do

all that Plaintiff's wish they could, but whether the available remedies are sufficient to meet

the . . . requirement that the remedy be adequate.'"  31 Foster Children, 329 F.3d at 1279

(quoting Bonnie L. v. Bush, 180 F. Supp. 2d 1321, 1337 (S.D. Fla. 2001)).  Plaintiff argues

that she was unable to raise her constitutional claims in the state court proceeding, because

Defendants "ignored" the constitutional and jurisdictional challenges to her criminal

prosecution.  See id. ¶9.  However, Plaintiff further represents that Defendant Parker

presided over a hearing in which she and Defendant Hartery presented arguments regarding

the constitutional and jurisdictional issues raised by the motion to dismiss.  See id. ¶17. The

fact that the Defendant Parker issued an unfavorable ruling after Plaintiff and Defendant

Hartery presented their respective arguments on the matter does not provide a proper basis

for Plaintiff's assertion that her claims were not and could not be raised in the state proceeding. Even assuming Plaintiff is correct that Defendant Parker ignored her constitutional challenges at the hearing on the motion to dismiss, the Court finds that these allegations establish only that Plaintiff's constitutional challenges were considered and rejected, not that Florida state law bars their consideration. See Old Republic Union Ins. Co., 124 F.3d at 1262. Moreover, Plaintiff fails to point to any "unambiguous authority" in support of her assertion that she lacks an adequate opportunity to raise her constitutional claims at a present or later stage of the state proceeding. Indeed, Plaintiff has not argued, and the factual allegations do not suggest, that Plaintiff is unable to raise these claims on appeal in the state appellate court or, ultimately, before the Florida Supreme Court. Because Plaintiff failed to meet her burden of showing that Florida law barred her from raising her constitutional claims in the state proceeding, the third Middlesex requirement is satisfied. Therefore, unless one of the narrow exceptions to the Younger abstention doctrine is met, the Court will abstain from adjudicating Plaintiff's request for injunctive and declaratory relief pertaining to the ongoing criminal prosecution. See Younger, 401 U.S. at 41, 44-45, 49; Hughes, 377 F.3d at 1263.

### 2. Exceptions to the Younger Doctrine

Plaintiff argues that the Court should assume jurisdiction of this case, as she "faces imminent irreparable harm and loss of her freedom due to [the] malicious and selective prosecution" by Defendants. Second Amended Complaint at 9. Plaintiff maintains that she is threatened with irreparable harm as a result of Defendants' prosecution of her under an unconstitutional criminal statute. See Second Amended Complaint at 9. The Supreme

Court has found that a plaintiff is threatened with irreparable injury if the state statute under which she is prosecuted is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort may be made to apply it." Younger, 401 U.S. at 53-54. However, the fact that a statute is unconstitutional on its face does not warrant enjoining a prosecutor's good faith enforcement of it.[11] See Hughes, 377 F.3d at 1263 n.8 (quoting Kolski v. Watkins, 544 F.2d 762, 766 (5th Cir. 1977)). Moreover, the Supreme Court has held that generally "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." Younger, 401 U.S. at 46. While Plaintiff argues that section 454.23, Florida Statutes, fails to adequately define the unlicensed practice of law and is inconsistent with the statute's legislative intent, there is no basis for a finding that the statute is "flagrantly and patently violative," nor that it is unconstitutional in "every clause, sentence and paragraph." See Younger, 401 U.S. at 53-54.

Similarly, the Court's review of the Second Amended Complaint reveals no basis for a finding that the bad faith exception to Younger is met. Indeed, a court will apply the bad faith exception only in the most extraordinary circumstances, where "the statute is enforced

---

[11]     Indeed, Younger itself involved a First Amendment challenge to an underlying penal statute. See generally Younger, 401 U.S. 37.

against [the plaintiff] with no expectation of a conviction, but only to discourage exercise of protected rights." <u>Wilson v. Thompson</u>, 593 F.2d 1375, 1383 (5th Cir. 1979).[12]

Despite Plaintiff's assertions that Defendant Hartery prosecuted her in furtherance of a conspiracy with Defendant Parker, the factual allegations in the Second Amended Complaint do not support a finding that Defendants are prosecuting her case absent an expectation of conviction, nor that the prosecution is solely motivated by a desire to discourage the exercise of Plaintiff's constitutional rights.  As the Court finds that issuing the relief requested by Plaintiff would have the effect of a direct interference with the state court criminal proceeding, and determines that none of the exceptions to <u>Younger</u> are met in this case, the Court has determined to abstain from adjudicating Plaintiff's claims for declaratory and injunctive relief.[13]

### C. Official Immunity

Moving next to Plaintiff's request for damages pursuant to 42 U.S.C. §1985 and §1983, the Court examines Plaintiff's assertion that Defendants do not enjoy traditionally recognized immunities with regard to the alleged acts giving rise to the instant lawsuit, as

---

[12]       In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[13]       To the extent Plaintiff's criminal prosecution may now be completed, this Court is precluded from acting as a "super-appellate" court over a state court action.  <u>See District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983) (concluding that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings[,] [as review] of such judgments may be had only in [the United States Supreme] Court"); <u>Goodman ex rel. Goodman v. Sipos</u>, 259 F.3d 1327, 1332 (11th Cir. 2001) (recognizing that "'[t]he <u>Rooker-Feldman</u> doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts").  Thus, even if <u>Younger</u> did not apply in this case, Plaintiff's claims for declaratory and injunctive relief would nonetheless fall squarely within the bar of the <u>Rooker-Feldman</u> doctrine.  Thus, the Court would nonetheless lack the jurisdiction to review the underlying state court judgment or hear those claims inextricably intertwined with a state court judgment.  <u>See Feldman</u>, 460 U.S. at 486-87; <u>Goodman ex rel. Goodman</u>, 259 F.3d at 1332.

these acts "have been committed . . . without jurisdiction due to the nullity of the law." Second Amended Complaint ¶¶7-8.

### 1. Judicial Immunity

In the Motion to Dismiss, Defendants argue that Plaintiff's claims against Defendant Parker, a Circuit Judge of the Twelfth Judicial Circuit, are barred by absolute judicial immunity, unless the Court finds that Defendant Parker "clearly act[ed] without jurisdiction." Motion to Dismiss at 9. Defendant Parker maintains that Plaintiff's "mere assertion" that he acted outside his jurisdiction is not sufficient to defeat absolute judicial immunity in this case. Id. On the other hand, Plaintiff argues that Defendant Parker, "has engaged in the acts of malicious and selective prosecution." Second Amended Complaint ¶8. As such, Plaintiff argues that "[w]hile Parker would ordinarily be cloaked against liability by the legal doctrine of judicial immunity, here the criminal charges levied against Plaintiff are challenged as unconstitutional and therefore, judicial immunity does not attach because Parker's acts have been committed where he was without jurisdiction due to the nullity of the law." Id.

The application of the doctrine of absolute immunity is strictly a question of law for the Court to determine. See Brown v. Crawford County, Ga., 960 F.2d 1002, 1012 (11th Cir. 1992). "As early as 1872, the Court recognized that it . . . [is] 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Stump v. Sparkman, 435 U.S. 349, 355 (1978) (second alteration in original) (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1872)). Based on this reasoning, the Supreme Court has determined that judges can not

be held liable for their judicial acts even if those acts are corrupt, done with malice or in excess of the judges' jurisdiction.  See Stump, 435 U.S. at 356; see also Wahl v. McIver, 773 F.2d 1169, 1172 (11th Cir. 1985).  Indeed, judges are absolutely shielded from civil liability for acts committed while acting within their judicial capacity unless those acts are determined to be in the "clear absence of all jurisdiction."  Harris v. Deveaux, 780 F.2d 911, 914 (11th Cir. 1986); see also Sun v. Forrester, 939 F.2d 924, 925 (11th Cir. 1991) (per curiam) (citing Dennis v. Sparks, 449 U.S. 24, 27-29 (1980)).[14]

In Stump, the Supreme Court recognized a two-part test to be used in determining whether a judge is absolutely immune from potential civil liability.  See Stump, 435 U.S. at 356-62.  The reviewing court must ask whether the judge was acting in a judicial capacity while dealing with the plaintiff, and whether the judge acted in the "clear absence of all jurisdiction."  Id. at 356-57, 360.  Only in circumstances where a judge acted in the "clear absence of all jurisdiction" or dealt with a plaintiff in a non-judicial capacity can the judge face civil liability for actions taken.  See id. 356-62.  Utilizing this framework, the Court will

---

[14]    Strong public policy arguments support upholding the doctrine of absolute judicial immunity.

First and foremost, a judge must be free to act upon his own convictions, without apprehension of personal consequences; second, the controversiality and importance of the competing interests in a case before a court make it likely that the losing party may be overly willing to ascribe malevolent motives to the judge; third, judges faced with the prospect of defending damages actions and, perhaps, satisfying money judgments would be driven to wasteful and destructive self-protection devices and, moreover, may be less inclined to administer justice; fourth, alternative remedies such as appeal and impeachment reduce the need for private rights of action against judges; and fifth, the ease of alleging bad faith would make a qualified "good faith" immunity virtually worthless because judges would constantly be forced to defend their motivations in court.

Dykes v. Hosemann, 776 F.2d 942, 949 (11th Cir. 1985).

now consider whether Defendant Parker is entitled to immunity from the claims asserted against him by Plaintiff.

### a.  Were the challenged acts "judicial" in nature?

In determining whether an act is judicial in nature, "[t]he relevant inquiry is the 'nature' and 'function' of the act,' not the 'act itself.'   In other words, [the Court] look[s] to the particular act's relation to a general function normally performed by a judge." Mireles v. Waco, 502 U.S. 9, 13 (1991) (quoting Stump, 435 U.S. 349, 362 (1978)).  In determining whether a judge was acting within his or her judicial capacity, the Eleventh Circuit instructs courts to consider several factors: whether "(1) the precise act complained of . . . is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity." Harper v. Merckle, 638 F.2d 848, 858 (5th Cir. Unit B Mar. 1981) (quoting McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir. 1972)); see also Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005).

Despite the Court's very liberal construction of the claims pled in the Second Amended Complaint, it is evident that all of  the acts or omissions alleged to have been taken (or not taken) by Defendant Parker are of the type normally performed by a judge and all of Plaintiff's allegations against Defendant Parker are directed at various events arising in the course of Plaintiff's pretrial proceedings.  Indeed, Plaintiff's claims are predicated on allegations that Defendant Parker unconstitutionally ordered her to refrain from the unlicensed practice of law as a condition of pretrial release, see Second Amended

-18-

Complaint ¶11, failed to advise her that she had a constitutionally protected right to assistance of counsel at her arraignment, see id. ¶15, imposed upon her an excessive bail to secure her pretrial release, see id. ¶13, and ignored her attempts to present jurisdictional and constitutional challenges to Section 454.23, Florida Statutes, see id. ¶9. These events occurred as part of an ongoing judicial proceeding in a Florida state court, and Plaintiff fails to suggest or provide any basis for a conclusion that the actions of Defendant Parker occurred outside his judicial chambers. Moreover, the fourth Harper factor does not appear to be particularly relevant based on the scope of allegations in the Second Amended Complaint. That is, Plaintiff has not alleged any "visit" to Defendant Parker, nor has she alleged that she had an "altercation" with him. Nonetheless, to the extent that the judge's rulings, unfavorable to Plaintiff, can be construed as a "visit" or "altercation," Defendant Parker unquestionably acted in his capacity as a sworn judicial officer in entering those rulings.

Therefore, while Plaintiff argues that Defendant Parker should not be immunized, see Second Amended Complaint ¶8, the actions of Defendant Parker were well within the definition of judicial acts. Indeed, a review of the Harper factors when applied to the instant case compels a conclusion that Defendant Parker was acting in a judicial capacity.[15] In consideration of the foregoing, the Court concludes that Defendant Parker acted in the

---

[15]   The Plaintiff in the instant case argues that Defendant Parker was acting outside the scope of his judicial capacity. However, the factual allegations of the Second Amended Complaint demonstrate that the grievances of which Plaintiff complains arose out of the actions Defendant Parker took while presiding over Plaintiff's criminal pretrial proceedings (e.g. setting bail, presiding over an arraignment). These types of actions are exactly what the Supreme Court in Stump held as being immunized from civil liability. See Stump, 435 U.S. at 355.

scope of his judicial capacity with regard to all of the acts and omissions challenged by Plaintiff.

### b.   Were the challenged acts taken in the "absence of jurisdiction"?

In order to invoke the exception to judicial immunity premised on the assertion that the judge acted in the absence of subject matter jurisdiction, a plaintiff must show that the judge acted not merely "in excess of jurisdiction," but instead in the "clear absence of all jurisdiction." Dykes, 776 F.2d at 947 (quoting Stump, 435 U.S. at 356-57) (emphasis added).   Courts broadly construe the scope of jurisdiction in resolving questions of the applicability of absolute immunity. Dykes, 776 F.2d at 947 (quoting Stump, 435 U.S. at 356-57).   Indeed, "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump, 435 U.S. at 356-57.

Plaintiff relies on Florida Bar v. Kent, 958 So.2d 921, at *1 (Fla. May 18, 2007), for the proposition that the Florida Supreme Court has exclusive jurisdiction over all cases prosecuted under section 454.23, Florida Statutes.  Plaintiff explains that in Kent, the Florida Supreme Court  "inform[ed] the 17th Judicial Circuit that they [were] usurping jurisdiction[] which [did] not belong to them for prosecuting [the defendant] for the unauthorized practice of law." See Second Amended Complaint ¶18; Exhibit 10.  Plaintiff attached a copy of the Florida Supreme Court's order as Exhibit 10 to her Second Amended Complaint.  Upon review of the order, the Court finds that Plaintiff misconstrued the ultimate holding of the Florida Supreme Court in Kent.  There, the Florida Supreme Court determined that the

Circuit Court, Seventeenth Judicial Circuit, exceeded "its jurisdiction and usurp[ed] the exclusive jurisdiction of [the Florida Supreme Court] with respect to the discipline of persons *admitted to the practice of law in Florida*." See Second Amended Complaint Exhibit 10 (emphasis added).  As Plaintiff is not authorized to practice law in Florida, the Court determines that Kent is inapposite to this case.  Accordingly, the Court discerns no basis for a finding that Defendant Parker acted outside the scope of his jurisdiction at all, much less "clearly" outside the scope of his jurisdiction.

Finally, the Court rejects Plaintiff's assertion that Defendant Parker is stripped of his immunity because he was in "collusion" with Defendant Hartery.  Indeed, the United States Supreme Court has determined that absolute judicial immunity applies even if a challenged official act is taken in furtherance of a conspiracy or otherwise a product of bad faith or malice.  Mireles, 502 U.S. at 11.  The Court determines that Defendant Parker is shielded by absolute immunity because the acts challenged by Plaintiff are judicial in nature and there is no basis for the Court to find that Defendant Parker acted in the clear absence of all jurisdiction.  Therefore, the Court finds that Plaintiff's claims seeking damages against Defendant Parker are due to be dismissed.

### 2. Prosecutorial Immunity

The Court turns next to the question of whether Defendant Hartley, the prosecuting attorney in Plaintiff's pending state criminal case, enjoys prosecutorial immunity for the alleged actions giving rise to Plaintiff's claims against him.  A prosecutor is entitled to absolute immunity for all actions performed within the scope of the prosecutor's role as a government advocate.  Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004) (citing Buckley

v. Fitzsimmons, 509 U.S. 259, 273 (1993)); see also Smith v. Shorstein, 217 Fed. Appx. 877, 880 (11th Cir. 2007). Absolute prosecutorial immunity encompasses all acts taken by a prosecutor in performing his role as a government advocate, including "the initiation and pursuit of criminal prosecution, and most appearances before the court, including examining witnesses and presenting evidence." Rivera, 359 F.3d at 1353 (internal citations omitted); see also Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999) (finding that absolute immunity extends to a prosecutor's acts performed "in preparing for the initiation of judicial proceedings for trial, and which occur in the course of his role as an advocate for the State"). Indeed, a prosecutor is absolutely immune to suits for money damages unless the acts or omissions giving rise to the plaintiff's claim are outside the "scope and territorial jurisdiction of his office."[16] Elder v. Athens-Clarke County, Ga., 54 F.3d 694, 695 (11th Cir. 1995); see also Smith, 217 Fed. Appx. at 880. In determining whether a prosecutor's challenged actions were taken in the scope of his role as a state advocate, the Court examines the function and nature of the act, not merely the official title of the actor who performed it. Buckley, 509 U.S. at 269.

In the instant case, Plaintiff argues that while Defendant Hartery ordinarily enjoys absolute prosecutorial immunity, "state immunity does not attach [here] because [his] acts have been committed where he was without jurisdiction due to the nullity of the law." Second Amended Complaint ¶7. However, nothing in the Second Amended Complaint

---

[16]     Prosecutorial immunity extends to actions taken by a prosecutor in the scope of his role as a government advocate and applies unless the prosecutor acts outside of the scope and *territorial* jurisdiction of his office. Elder, 54 F.3d at 695; see also Smith, 217 Fed. Appx. at 880. In contrast, the "clear absence of jurisdiction" exception applies only to absolute judicial immunity and applies only where a judge's actions are taken in the absence of jurisdiction over the *subject matter*. Dykes, 776 F.2d at 946-949 (11th Cir. 1985)).

indicates that Defendant Hartery acted outside the scope of his *territorial* jurisdiction in his decision to prosecute Plaintiff.  Even if Plaintiff proves that Defendant Hartery "engaged in acts of malicious and selective prosecution," he nonetheless enjoys absolute immunity for his initiation and pursuit of Plaintiff's criminal prosecution.  See Jones, 174 F.3d at 1281 ("A prosecutor is absolutely immune from suit for malicious prosecution.").  Moreover, while Plaintiff asserts that Defendant Hartery violated her First Amendment right to free speech, as well as the "Separation of Powers clause," by submitting jury instructions "created 'specifically' to be used at Plaintiff's trial," see id. ¶20,  the Court finds that the creation of jury instructions are well within the ambit  of ordinary prosecutorial duties.

### D.  18 U.S.C. §241

Finally, the Court addresses Plaintiff's assertion that Defendants "acting under color of law[,] have conspired against [her]" in violation of 42 U.S.C. §241.  Amended Complaint ¶27.  Section 241 is a criminal conspiracy statute, which provides that "individuals who conspire to 'injure, oppress, threaten, or intimidate' another person's 'free exercise or enjoyment of any right or privilege secured to him by the Constitution' shall be fined, or imprisoned, or both."  O'Berry v. State Attys. Office, 241 Fed. Appx. 654, 657 (11th Cir. 2007) (quoting 18 U.S.C. §241).  As Plaintiff may not force the federal prosecutor to institute a criminal prosecution against Defendants pursuant to 18 U.S.C. §241, and the statute does not authorize civil suits or give rise to civil liability, the Court determines that it does not provide a proper basis for Plaintiff's claims.  Thus, the Court determines that any of Plaintiff's claims based on 18 U.S.C. §241 are due to be dismissed.

**V.  Conclusion**

Accordingly, it is hereby **ORDERED**:

1.    Defendants' Motion to Dismiss (Doc. No. 57) is **GRANTED**.

2.    Plaintiff's Second Amended Complaint (Doc. No. 48) is **DISMISSED WITH PREJUDICE**.

3.    The Clerk of the Court is **directed** to terminate any pending motions or deadlines as moot and close this file.

**DONE AND ORDERED** at Fort Myers, Florida, this __20th__ day of March, 2008.

**MARCIA MORALES HOWARD**
United States District Judge

lc5

Copies to:

Counsel of Record